UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS M. MAYS, | No. C-06-4760 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO STRIKE** |
| JOHN POTTER, *et al.*, | |
| Defendants. | **(Docket Nos. 47, 63)** |

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Defendant John Potter's motion to strike but **GRANTS** his motion for summary judgment.[1]

## I. FACTUAL & PROCEDURAL BACKGROUND

The evidence, either not in dispute or viewed in Plaintiff's favor, reflects as follows.[2]

During the 2000-2001 period, Plaintiff Doris Mays was employed at a Postal Service facility in San Francisco known as the Processing and Distribution Center. *See* Dacasin Decl. ¶ 2. Ms.

---

[1] As Mr. Potter is being sued in his official capacity, the Court shall hereinafter refer to Defendant as the Postal Service.

[2] The Postal Service has filed objections to some of the evidence submitted by Ms. Mays. The objections are overruled as moot as the Court need not rely on that evidence in deciding the motion for summary judgment.

The Postal Service has also moved to strike the Hopkins declaration and attached exhibits on the ground that the documents were not filed with the Court and were not timely served (two days late). After the Postal Service moved to strike, Ms. Mays filed the documents. Although Ms. Mays's conduct is not condoned, the motion to strike shall be denied, especially as the Postal Service does not appear to have suffered any prejudice as a result.

Mays was a distribution clerk in the Nixie/Damaged Mail Unit. *See* Dacasin Decl. ¶ 2. Jaime Marotta also worked in the Nixie Unit. *See* Dacasin Decl. ¶ 2. Mr. Dacasin was the supervisor of both Ms. Mays and Mr. Marotta. *See* Dacasin Decl. ¶ 2. Mr. Plenos was Mr. Dacasin's supervisor. *See* Plenos Decl. ¶ 2.

According to Ms. Mays, on May 24, 2000, Mr. Marotta physically accosted her (hereinafter the "May 2000 incident"). *See* Mays Decl. ¶ 2. Ms. Mays reported the incident to Mr. Dacasin. *See* Mays Decl. ¶ 8; Dacasin Decl. ¶ 3. According to Mr. Dacasin, he investigated the incident but ultimately he concluded that there was insufficient evidence to support Ms. Mays's complaint against Mr. Marotta. *See* Dacasin Decl. ¶ 4. In so concluding, Mr. Dacasin refused to give credence to the statement of another employee who witnessed the incident. *See* Dacasin Decl. ¶ 4; *see also* Dacasin Decl., Ex. 1 (letter of controversion from Mr. Dacasin to injury compensation specialist). After the May 2000 incident, Ms. Mays left work, claiming an injury resulting from the incident, and did not return to work until February 2001. *See* Dacasin Decl. ¶¶ 5, 7.

On June 19, 2000, Ms. Mays made an EEO request for counseling with respect to the May 2000 incident. *See* Klipp Reply Decl., Ex. 3 (EEO request for counseling). Ms. Mays claimed that she had been discriminated against on the basis of her sex, race, and disability. *See* Klipp Reply Decl., Ex. 3. Plaintiff attached to the request two accounts written by Ms. Mays about what took place on that day -- *i.e.*, that Mr. Marotta body slammed her and that Mr. Dacasin was not very concerned about what had happened when she told him about it. *See* Klipp Reply Decl., Ex. 3.

On or about October 6, 2000, Ms. Mays and the Postal Service entered into a settlement agreement with respect to the May 2000 incident. *See* Klipp Decl., Ex. B (settlement agreement). The agreement provided in relevant part as follows:

> 1. In resolution of the issues raised by the Counselee, the Agency agrees that it will take appropriate discipline action against Jaime Marotta if he engages in any future physical or verbal contact with the Counselee.
>
> 2. The Agency further agrees that it will make Mr. Marotta fully aware of this agreement and the above-stated consequences.
>
> 3. The Counselee agrees that she will not initiate any contact, verbal or physical, with the above-named employee.

> 4. The Agency finally agrees that there will be no retaliation against the Counselee for her engagement in the EEO process.

Klipp Decl., Ex. B. The settlement agreement also specified that "[a]ny alleged breach arising out of the implementation of or compliance with this settlement agreement must be reported in writing to the EEO Office within 30 days of the alleged breach." Klipp Decl., Ex. B.

As noted above, Ms. Mays did not return to work until February 2001. *See* Dacasin Decl. ¶ 7. When she returned to work, Ms. Mays discovered that her chair had been slashed (hereinafter "chair slashing incident"). *See* Mays Depo. at 72. Ms. Mays felt that the chair slashing was related to her having complained about the May 2000 incident. *See* Mays Depo. at 79. Thereafter, on March 12, 2001, she made another EEO request for counseling. *See* Klipp Reply Decl., Ex. 4 (EEO request for counseling). This request was based on the chair slashing incident and on the May 2000 incident. According to Ms. Mays, she had been discriminated against on the basis of her race, sex, disability, and age. *See* Klipp Reply Decl., Ex. 4.

On April 5, 2001, while the EEO complaint was still pending, another incident took place between Ms. Mays and Mr. Marotta (hereinafter the "April 2001 incident"). According to Ms. Mays, Mr. Marotta approached her and simulated stabbing her in the face with a pencil. *See* Mays Decl., Ex. 8. Ms. Mays made a complaint about the incident to Mr. Plenos. *See* Plenos Decl. ¶ 3; *see also* Mays Decl., Ex. 10 (letter, dated April 20, 2001, from Mr. Plenos to Ms. Mays). Mr. Marotta, claiming instead that Ms. Mays verbally abused him, also complained to Mr. Plenos. *See* Plenos Decl. ¶ 3. Subsequently, Ms. Mays left work, once again claiming an injury related to this incident, and has not returned to work since. *See* Mays Depo. at 111.

After the April 2001 incident, both Mr. Dacasin and Mr. Plenos investigated what had happened.[3] *See* Dacasin Decl. ¶ 10; Plenos Decl. ¶ 4. Each reached the conclusion that there was insufficient evidence to support Ms. Mays's complaint against Mr. Marotta. *See* Dacasin Decl. ¶ 10; Plenos Decl. ¶ 6. On April 20, 2001, Mr. Plenos sent Ms. Mays a letter summarizing the

---

[3] Ms. Mays disputes that she was interviewed by Mr. Plenos. *See* Mays Decl. ¶ 16.

3

information he received during his investigation and stating his findings. *See* Plenos Decl. ¶ 6; Mays Decl., Ex. 10 (letter, dated April 20, 2001, from Mr. Plenos to Ms. Mays).

On June 13, 2001, Ms. Mays and the Postal Service entered into another settlement agreement. It appears that this settlement agreement resolved both the EEO complaint that Ms. Mays initiated in March 2001 (concerning the chair slashing incident and the May 2000 incident) as well as Ms. Mays's complaint to the Postal Service about the April 2001 incident.[4] *See* Mays Depo. at 116. Similar to above, the settlement agreement specified that

> [a]ny alleged breach arising out of the implementation of or compliance with this settlement agreement must be reported in writing to the EEO Office within 30 days of the alleged breach. The statement of noncompliance may include a request that the terms of the settlement agreement be specifically implemented or alternatively, that the complaint be reinstated for further processing from the point processing ceased.

Klipp Decl., Ex. G.

On June 29, 2004, Ms. Mays sent a letter to the EEOC, requesting reconsideration of the EEO complaint she filed regarding the May 2000 and April 2001 incidents. Ms. Mays felt that she "was not properly represented and the EEO personnel did not inform me about what I needed to know about filing a complaint. I was informed that all I needed was a mediation to resolve my disputes. Management did not honor the decision that was agreed upon." Mays Decl., Ex. 17 (letter, dated June 29, 2004, from Ms. Mays to EEOC). She did not expressly claim, in her letter, that any of the actions occurring in 2001 was the result of retaliatory conduct by management. *See* Mays Decl., Ex. 17.

On November 4, 2004, the EEOC issued its decision. It construed Ms. Mays's letter as a complaint that the settlement agreement had been breached. *See* Hopkins Decl., Ex. 1-A (EEOC decision). The EEOC noted that Ms. Mays had not notified the agency's EEO Director of any alleged breach in accordance with 29 C.F.R. § 1614.504(a). *See* 29 C.F.R. § 1614.504(a) ("If the complainant believes that the agency has failed to comply with the terms of a settlement agreement

---

[4] There is no evidence in the record that Ms. Mays filed a new EEO complaint with respect to the April 2001 incident. Rather, it appears that Ms. Mays's complaint about the April 2001 incident was investigated as part of the EEO complaint that she initiated in March 2001 (with respect to the chair slashing incident and the May 2000 incident).

or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of the when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased."). But, according to the EEOC, it was not able "to determine the precise nature of [the] breach claims and there is insufficient evidence of record to determine whether the agency is in compliance with the June 13, 2001 and October 6, 2000 settlement agreements." Hopkins Decl., Ex. 1-A. The EEOC therefore remanded the breach claim to the agency, stating that the agency should (1) contact Ms. Mays to ascertain the precise nature of her breach claims, (2) investigate the breach claims to determine whether it was in compliance with the settlement agreements, and (3) issue a determination as to whether the agency had breached the settlement agreements. *See* Hopkins Decl., Ex. 1-A.

In accordance with the EEOC's order, the Postal Service sent a letter to Ms. Mays on December 6, 2004, asking her to provide additional information in support of her claim for breach. *See* Third Klipp Decl., Ex. 1 (letter, dated December 6, 2004, from Postal Service to Ms. Mays). On December 21, 2004, Ms. Mays responded to the Postal Service's letter via counsel. Counsel specifically stated in her letter that Ms. Mays was now represented. *See* Third Klipp Decl., Ex. 2 (letter, dated December 21, 2004, from Wells & Hopkins to Postal Service). Subsequently, on January 5, 2005, Ms. Mays's counsel sent a letter to the Postal Service providing additional information regarding the breach claim. *See* Wang Reply Decl., Ex. 2 (letter, dated January 5, 2005, from Wells & Hopkins to Postal Service). In the letter, counsel stated that provisions (1), (2), and (4) of the October 2000 settlement were breached. *See* Wang Reply Decl., Ex. 2. It appears that these provisions of the October 2000 settlement agreement were breached -- according to Ms. Mays -- because (1) Mr. Plenos failed to adequately respond to her complaint on April 5, 2001, (2) the Postal Service failed to notify the relevant supervisors (including Mr. Plenos) about the October 2000 settlement, and (3) Mr. Dacasin made a habit of bringing Mr. Marotta into her working unit, with the two men standing behind her back engaging in conversation and/or standing by the clock at

the end of her shift to observe her clock out. *See* Wang Reply Decl., Ex. 2. Counsel did not make any claim that the June 2001 settlement had been breached.

Thereafter, the Postal Service investigated the breach claim based on the allegations made in the January 5, 2005, letter from Ms. Mays's counsel. *See* Third Klipp Decl., Ex. 3 (e-mail correspondence, dated January 2005). On January 31, 2005, the Postal Service issued a letter of determination, in which it concluded that it "did not violate the terms and conditions of the agreement signed on October 6, 2000." Third Klipp Decl., Ex. 4 (letter of determination, dated January 31, 2005). The Postal Service noted that, "[i]f you are dissatisfied with this Final Determination, you may appeal this matter to the U.S. Equal Employment Opportunity Commission . . . . The appeal must be filed within 30 days of your receipt of this decision." Third Klipp Decl., Ex. 4. A copy of the letter of determination was sent to Ms. Mays, her attorney, and the EEOC. *See* Third Klipp Decl., Ex. 4; Third Klipp Decl., Ex. 5 (letter, dated January 31, 2005, from Postal Service to EEOC). On March 7, 2005, the EEOC sent a letter to Ms. Mays stating that compliance monitoring activity had ceased based on the Postal Service's notification that she was provided a final agency decision with appeal rights. *See* Pl.'s Ex. No. 27.[5] The EEOC carbon copied both the Postal Service and Ms. Mays's counsel on the letter. *See* Pl.'s Ex. No. 27.

At some point, apparently in 2005, Ms. Mays moved for reconsideration of the EEOC order of November 4, 2004. *See* Hopkins Decl., Ex. 1-C (letter from the EEOC, dated June 30, 2005, stating her request for reconsideration has been docketed). On July 6, 2005, the EEOC issued a decision denying Ms. Mays's request for reconsideration. Nonetheless, the EEOC reiterated what it had stated in its prior order -- *i.e.*, that the Postal Service should contact Ms. Mays to ascertain the precise nature of her breach claim, investigate the claim to determine whether it was in compliance with the settlement agreements, and timely issue a determination as to whether it had whether it had breached the settlement agreements. *See* Klipp Reply Decl., Ex. 2 (EEOC decision). In the decision, the EEOC noted that, if the Postal Service did not comply with the EEOC's order, then Ms. Mays had the right to file a civil action to enforce compliance with the EEOC order. Alternatively,

---

[5] Ms. Mays's Exhibit No. 27 was not attached to an authenticated declaration. However, the authenticity of the document does not appear to be at issue. Neither party has objected to the exhibit.

1 she had the right to file a civil action on the underlying complaint "within ninety (90) calendar days
2 from the date that you receive this decision." Klipp Reply Decl., Ex. 2, at 3. In particular, the order
3 stated:

> If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled 'Right to File a Civil Action.' 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. *See* 29 C.F.R. § 1614.409.

Klipp Reply Decl., Ex. 2, at 2. The section regarding a complainant's right to file a civil action provides as follows:

> This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court, within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the agency, or filed your appeal with the Commission.

Klipp Reply Decl., Ex. 2, at 2-3.

On October 7, 2005, the Postal Service sent a letter to Ms. Mays's counsel (Ms. Mays was carbon copied), regarding the EEOC's decision of July 6, 2005. *See* Third Klipp Decl., Ex. 6 (letter, dated October 7, 2005, from Postal Service to Wells & Hopkins). The Postal Service noted that the EEOC had issued an identical order to the agency on November 4, 2004; that the Postal Service had made an inquiry consistent with that order; and that, on January 5, 2005, allegations had been made as to how the settlement agreement had been breached. The Postal Service then stated: "If you have other additional information and or evidence to submit supporting [Ms. Mays's] claim, please respond within five (5) days of your receipt of this letter. Otherwise, [the agency] will re-submit the response you provided on January 5, 2005, in compliance with the [EEOC] order dated July 6, 2005,

since the order from [the EEOC] was the same to that of November 4, 2004." Third Klipp Decl., Ex. 6.

On October 20, 2005, counsel for Ms. Mays responded to the Postal Service's letter, asking for an extension until October 25, 2005, to provide a supplemental response. *See* Third Klipp Decl., Ex. 7 (letter, dated October 20, 2005, from Wells & Hopkins to Postal Service). The Postal Service did not receive any supplemental response by October 25, and so sent a letter to Ms. Mays's counsel (Ms. Mays was carbon copied) stating such. *See* Third Klipp Decl., Ex. 8 (letter, dated October 31, 2005, from Postal Service to Wells & Hopkins). The Postal Service also stated that, if it did not receive the supplemental response by November 4, 2005, then it would "go ahead and re-submit the information you provided our office on January 5, 2005. Please be informed that our office as a time limit in complying with this order." Third Klipp Decl., Ex. 8.

The Postal Service did not receive any response from Ms. Mays or her counsel by November 4, 2005, and so, on November 17, 2005, it issued another letter of determination in order to comply with the EEOC's decision of July 6, 2005. *See* Third Klipp Decl., Ex. 9 (letter of determination, dated November 17, 2005). In the letter of determination, the Postal Service concluded that it "did not violate the terms and conditions of the agreement signed on October 6, 2000" and advised that, "[i]f you are dissatisfied with this Final Determination, you may appeal this matter to the U.S. Equal Employment Opportunity Commission . . . . The appeal must be filed within 30 days of your receipt of this decision." Third Klipp Decl., Ex. 9. A copy of the letter of determination was sent to both Ms. Mays and her counsel. *See* Third Klipp Decl., Ex. 9.

Several days later, on November 21, 2005, Ms. Mays's counsel sent a letter to the Postal Service (carbon copying Ms. Mays), asserting that the agency's decision was erroneous because a material fact had been ignored, namely, testimony from a witness to the April 2001 incident, Maxine Davis. *See* Klipp Decl., Ex. 10 (letter, dated November 21, 2005, from Wells & Hopkins to Postal Service). On November 23, 2005, the Postal Service responded (again, Ms. Mays was carbon copied) that Ms. Davis had been interviewed by the agency, more specifically, by Mr. Plenos. *See* Third Klipp Decl., Ex. 11 (letter, dated November 23, 2005, from Postal Service to Wells & Hopkins). Also on November 23, the Postal Service sent to the EEOC a copy of its letter of

determination and the subsequent correspondence it had had with Ms. Mays's counsel. *See* Third Klipp Decl., Ex. 12 (letter, dated November 23, 2005, from Postal Service to EEOC). Thereafter, on December 19, 2005, the EEOC sent a letter to Ms. Mays's counsel (both the Postal Service and Ms. Mays were carbon copied), stating that compliance monitoring had ceased because "[t]he agency has notified us that you were provided a final agency decision with appeal rights." Hopkins Decl., Ex. B (letter, dated December 19, 2005, from EEOC to Ms. Mays). At the hearing on the instant motion, Ms. Mays's counsel conceded that after the December 19, 2005, letter from the EEOC, Ms. Mays had no further contact with the EEOC. Counsel also conceded that, after the March 12, 2001 request to the Postal Service for EEO counseling and the requests for reconsideration to the EEOC, Ms. Mays did not file any further administrative EEO claims.

On August 4, 2006, Ms. Mays initiated this lawsuit against the Postal Service, asserting claims for breach of the settlement agreement and retaliation. *See* Docket No. 1.

## II. **DISCUSSION**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In its motion for summary judgment, the Postal Service makes various arguments as to why it should be awarded summary judgment and why both the breach claim and the retaliation claim should be dismissed. For example, the Postal Service contends that the breach claim should be dismissed because there is no genuine dispute of fact that the claim is untimely and no monetary damages can be awarded for such a claim pursuant to 29 C.F.R. § 1614.504(a). The Postal Service further argues that Ms. Mays cannot revive her underlying discrimination claims through her breach claim. As for the retaliation claim, the Postal Service asserts that there is no genuine dispute of fact that Ms. Mays failed to exhaust her administrative remedies and that she did not suffer any adverse employment action.

While many of the above arguments appear to have merit, the Court need not discuss each and every one as this case can be easily be disposed of on the basis of untimeliness. Assuming that the EEOC, in its order of July 6, 2005, allowed Ms. Mays to sue in federal district court not only her breach of settlement claim but also her underlying claims of discrimination (including retaliation), thereby effectively waiving any issue of Ms. Mays's failure to comply with either or both settlement agreements and § 1614.504 (by not asserting a breach to the EEO director within 30 days), Ms. Mays had only ninety days to file such suit. This was the specific instruction of the EEOC in both its decisions which reflect the directive of 29 C.F.R. § 1614.407. Section 1614.407 provides that "[a] complainant who has filed an individual complaint . . . is authorized under title VII . . . to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of the Commission's final decision on an appeal." 29 C.F.R. § 1614.407. Ms. Mays, however, did not initiate this lawsuit until more than a year after the EEOC's last decision of July 6, 2005. Her lawsuit is therefore barred as untimely.[6]

---

[6] Notably, even if the Court were to consider the final decision of the EEOC to be its letter of December 19, 2005, announcing that compliance monitoring activity had ceased, *see* Hopkins Decl., Ex. 1-B, Ms. Mays's lawsuit would still be untimely. Ms. Mays did not file this lawsuit until August 6, 2006, which is more than 90 days or even 180 days after the EEOC's December 19, 2005, letter.

In supplemental briefing, Ms. Mays argues that the EEOC should have included a notification in its letter of December 19, 2005, pursuant to 29 C.F.R. § 1614.503(g). However, that regulation is not applicable since the EEOC was not making a determination that the Postal Service had failed to comply with a prior decision, nor had the Postal Service failed or refused to submit any required report of compliance. *See* 29 C.F.R. § 1614.503(g) ("Where the Commission has determined that an agency is

In her opposition, Ms. Mays argues that equitable tolling should apply to any statute-of-limitations. *See* Opp'n at 17. This argument is without merit. In her brief, Ms. Mays conclusorily invokes equitable tolling without providing or citing to any evidence that creates a genuine dispute of fact as to why equitable tolling is applicable.

At the hearing, counsel for Ms. Mays suggested for the first time that equitable tolling should apply because Ms. Mays was not represented by counsel during much of the EEO/EEOC proceedings and further was relying on the representations of EEO or EEOC officials. *See Josephs v. Pacific Bell*, 432 F.3d 1006, 1014 (9th Cir. 2005) ("Equitable tolling is available when an EEOC representative misleads the plaintiff concerning his claim."). However, this contention lacks merit. First, Ms. Mays did not provide or cite to any evidence of false or confusing representations by EEO or EEOC officials. In fact, as discussed above, the EEOC's decisions specifically informed Ms. Mays that she had ninety days to initiate a civil action in federal court. The time limit was printed in bold. *See* Klipp Reply Decl., Ex. 2, at 3 (EEOC decision). Second, at the time of the EEOC's decision on July 6, 2005, Ms. Mays was in fact represented by counsel and had been since at least December 21, 2004. *See* Third Klipp Decl., Ex. 2 (letter, dated December 21, 2004, from Wells & Hopkins to Postal Service). As noted above, on December 21, 2004, her counsel sent a letter to the Postal Service informing the agency that Ms. Mays was now represented; furthermore, it was Ms. Mays's counsel who responded on January 5, 2005, to the agency's request for information about the alleged breach. At the hearing, counsel for Ms. Mays admitted that a lawyer reading the July 6, 2005, decision would understand the need to timely file a civil action in accordance with the statute of limitations. *Cf. Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003) (noting that "[e]quitable tolling focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant"); *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) (stating that the doctrine of equitable tolling "is not available to avoid the consequences of one's own negligence"); *see also Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (noting that "[f]ederal courts have applied the

---

not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision . . . .").

11

doctrine of equitable tolling [when there are] extraordinary circumstances beyond plaintiffs' control [that] made it impossible to file the claims on time").

The Court therefore concludes that there is no basis for equitable tolling and that Ms. Mays's lawsuit is untimely.

### III. CONCLUSION

Accordingly, the Postal Service's motion for summary judgment is hereby granted. The Clerk of the Court is directed to enter judgment and close the file in this case.

This order disposes of Docket Nos. 47 and 63.

IT IS SO ORDERED.

Dated: February 6, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge